**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

ANDRE WILSON,

                Plaintiff,

v.                                        **Civil Action No. 1:08cv202**
                                        **(Judge Keeley)**

DELMOS GRAHAM, RICHARD STASNY,
STEVEN HYRE, JAMES GEORGE, MIKE
MUSSI, DONALD HIGGANS, STEVEN
FINCHAM AND JAMES SMITH,

                Defendants.

## REPORT AND RECOMMENDATION

### I.  Procedural History

On November 14, 2008, the *pro se* plaintiff initiated this case by filing a civil rights action against the above-named defendants. The plaintiff was granted permission to proceed as a pauper on November 17, 2008, and paid an initial partial filing fee on December 17, 2008. Upon a preliminary review of the file, the undersigned determined that summary dismissal was not appropriate at that time and directed the United States Marshal Service to serve the Complaint.

On January 8, 2009, the defendants filed a Motion to Dismiss. Because the plaintiff is proceeding *pro se*, the Court issued a <u>Roseboro</u> Notice on January 15, 2009.[1] The plaintiff filed a response to the defendants' motion on February 4, 2009, to which the defendants replied on February 10, 2009.

On February 12, 2009, the plaintiff filed a response to the defendant's reply, which then prompted the defendant's to file a Motion to Strike.

---

[1] <u>Roseboro v. Garrison</u>, 528 F.2d 309, 310 (4th Cir. 1975) (finding that the court must inform a *pro se* plaintiff of his right to file material in response to a motion for summary judgment).

This case is before the undersigned for a report and recommendation on the pending motions.

## II.  Contentions of the Parties

### A.  The Complaint

In the complaint, the plaintiff alleges that the defendants used excessive force against him in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.  In support of this claim, the plaintiff asserts that on September 24, 2008, the defendants extracted him from his cell.  The plaintiff concedes that he initially resisted the officers, and may have even bit one of them, but that after he was handcuffed and shackled, the defendants continued to kick and beat him and slam his head into the elevator, wall and floor.  By that time, the plaintiff asserts that he was not resisting and he posed no threat to the officers.

More specifically, the plaintiff alleges that defendant Delmos Graham ("Graham"), hit him in the back and mid-section, slammed him into the floor, banged his head against the elevator floor and walls and kicked him while he was lying on the shower floor in leg shackles and handcuffs.  Moreover, although not specifically naming the other defendants, the plaintiff asserts that the "other members of the extraction team" participated in this same conduct.  As to defendant James Smith ("Smith"), the plaintiff asserts that Smith controlled the camera used to record the extraction and subsequent events.  The plaintiff does not assert that Smith participated in the alleged unconstitutional conduct, only that Smith did not ride on the elevator when the plaintiff was taken to or from the third floor and that Smith "walked away" while the plaintiff was being decontaminated in the shower.[2]  The plaintiff implies that Smith did not get on the elevator, and walked away from the decontamination, so the alleged excessive force would not be captured on

_____

[2] It appears the extraction team used some sort of self-defense spray like mace or pepper spray on the plaintiff during the extraction.

video.

The plaintiff further asserts that at the time the alleged force was used, he was no longer struggling, that he was shackled and handcuffed and that he was no threat to the officers. Therefore, the plaintiff asserts that the defendants' actions were unnecessary, vengeful and excessive, in violation of the Eighth Amendment. As a result of the defendants actions during the extraction and afterward, the plaintiff asserts that he suffers from physical and mental pain and defamation of character.[3]

## B. The Defendant's Motion to Dismiss

In their motion to dismiss, the defendants assert that the plaintiff's complaint should be dismissed pursuant to Rule 12(b)(6) for the failure to state a claim for which relief may be granted. In support of that request, the defendants assert:

(1) the plaintiff has not made been any specific allegations against defendants Richard Stasny ("Stasny"), Steven Hyre ("Hyre"), James George ("George"), Mike Mussi ("Mussi"), Donald Higgans ("Higgans") and Steven Fincham ("Fincham");

(2) the plaintiff's allegations against Smith are not sufficient to state even a prima facie case of excessive force against that defendant;

(3) there is no showing that the plaintiff exhausted the administrative grievance procedure;

(4) the plaintiff can establish no set of facts to support his defamation of character claim;

(5) the defendants did not use excessive force; and

(6) the defendants are entitled to qualified immunity.

---

[3] The plaintiff asserts that he reported the incident and an investigation ensued. Because of the investigation, the plaintiff asserts that Graham, and the other officers involved, have been telling other inmates that he is a "snitch" and "baby raper."

**C.**   **The Plaintiff's Response to the Defendants' Motion to Dismiss**

In his response to the motion to dismiss, the plaintiff first asserts the factual basis for the defendants' motion is inaccurate.  According to the plaintiff, the defendants assert that he was extracted from his cell pursuant to an incident where the plaintiff punched a wall and broke a sprinkler head.  The plaintiff asserts that such conduct was not incident to the allegations in the complaint and did not precipitate the extraction that is the basis for this case.

Second, the plaintiff agrees that defendants Stasny, Hyre, George, Mussi, Higgans and Fincham should be dismissed.  However, he disagrees that defendant Smith should be dismissed. The plaintiff asserts that had Smith, "done his job," and recorded the entire incident, the alleged situation would have never happened.

Third, the plaintiff asserts that he did file administrative remedies and that he attached those remedies to his complaint.

Fourth, the plaintiff reasserts his argument that Graham used excessive force against him and subsequently defamed his character.

Finally, the plaintiff asserts that the defendants are not entitled to qualified immunity.

**D.**   **The Defendants' Reply to the Plaintiff's Response**

In their reply to the plaintiff's response, the defendants assert that because the plaintiff agrees that defendants Stasny, Hyre, George, Mussi, Higgans and Fincham should be dismissed as defendants in this action, the Court must grant their motion with regard to these defendants.  In addition, the defendants reiterate their claim that the plaintiff has failed to exhaust his administrative remedies.  The defendants further argue that the plaintiff concedes in his response that he did not exhaust his claims as to Smith, and that therefore, the complaint must be dismissed.  Finally, the

defendants reassert their argument that the plaintiff has failed to state a claim of excessive force and defamation of character.

**E.   The Plaintiff's Response to the Defendants' Reply**

In his response to the defendants' reply, the plaintiff asserts that the complaint sufficiently states a claim of excessive force and defamation of character.  Moreover, the plaintiff again asserts that he has exhausted his administrative remedies and points to the exhibits attached to his complaint in support of that argument.

**F.   The Defendants' Motion to Strike**

In their motion to strike, the defendants assert that the plaintiff's response to their reply is not contemplated by the Local Rules of this Court or the Federal Rules of Civil Procedure. Therefore, the defendants argue that the plaintiff's response to their reply should be disregarded by the Court.  Alternately, the defendants argue that if the Court should choose not to strike the plaintiff's response to their reply, the defendants should be given the opportunity to file an additional reply.

## III.   Standard of Review

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded material factual allegations.  Advanced Health-Care Services, Inc., v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990).  Moreover, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## IV.    Analysis

### A.    Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies.  42 U.S.C. § 1997(e)(a).  Exhaustion as provided in § 1997(e)(a) is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[4] and is required even when the relief sought is not available. Booth v. Churner, 532 U.S. 731, 741 (2001).  Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court.  See Porter v. Nussle, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits."  Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion."  Woodford at 93-94 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system.  Id. at 103.

In Jones v. Bock, 549 U.S. 199 (2007), the United States Supreme Court ruled, among other things, that an inmate's failure to exhaust under the PLRA is an affirmative defense, and an inmate is not required to specifically plead or demonstrate exhaustion in his complaint.  However, that

---

[4]    Porter v. Nussle, 534 U.S. 516, 524 (2002).

decision does not abrogate the fact that an action under 42 U.S.C. § 1983 is subject to exhaustion of administrative remedies as required by the PLRA. Moreover, the Court found that exhaustion does not have a "name all defendants" requirement. Id. at 217. All that is required to show proper and complete exhaustion is that the inmate followed all proper and appropriate steps to exhaust administrative remedies and that he did so in a timely manner. Id. at 217-18.

The West Virginia Division of Corrections ("WVDOC" or "DOC") has established a three level grievance process for prisoners to grieve their complaints in an attempt to resolve the prisoners' issues. See WVDOC Policy Directive ("PD") 335.00. The first level involves filing a G-1 Grievance Form with the Unit Supervisor. Id. at 335.00(A)(1). If the inmate receives no response or is unsatisfied with the response received at Level One, the inmate may proceed to Level Two by filing a G-2 Grievance Form with the warden/administrator. Id. at 335.00(B). Finally, the inmate may appeal the Level 2 decision to the Commissioner of the Division of Corrections. Id. at 335.00(C).

In this case the plaintiff has attached to the complaint copies of administrative remedies which purport to show that he has exhausted his available administrative remedies. The defendants have provided no evidence, other than the self-serving statements of counsel, to show that the plaintiff has not so exhausted. Specifically, the defendants have not filed an affidavit or declaration from any pertinent DOC official to sufficiently establish that the plaintiff has failed to exhaust his administrative remedies.

It is also noted that the defendants argue the plaintiff's claims are not exhausted because he failed to identify defendant Smith in the grievances that he did file. However, like the State grievance procedure in Jones, the WVDOC grievance system does not require an inmate to "name

all defendants." See WVDOC PD 335.00. Instead, an inmate is only required to state his name and number, the nature of his complaint and address only matters that affect him. Id. at 335.00(A)(3)-(4), Att. 1.

Accordingly, the defendants' motion to dismiss should be denied to the extent that it requests the dismissal of the complaint on exhaustion grounds.

**B.    Defendants Stasny, Hyre, George, Mussi, Higgans and Fincham**

In his response to the defendants' motion to dismiss, the plaintiff agrees that defendants Stasny, George, Mussi, Higgans and Fincham should be dismissed.

Accordingly, those defendants should be dismissed without prejudice.

**C.    Defendants Smith and Graham**

1.    Excessive Force

The Eighth Amendment prohibits "the unnecessary and wanton infliction of pain" which constitutes cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312 (1986). The use of excessive force may constitute cruel and unusual punishment. Hudson v. McMillian, 503 U.S. 1 (1992). An excessive force claim has two prongs. Under the objective prong, the plaintiff must establish that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Norman v. Taylor, 25 F.3d 1259, 1262 (4th Cir.1994) (en banc) cert. denied, 513 U.S. 1114 (1995)(quoting Hudson, 503 U.S. at 8). Under the subjective prong, the plaintiff must show that the "prison officials maliciously and sadistically used force to cause harm." Hudson, 503 U.S. at 9; Williams v. Benjamin, 77 F. 3d 756, 761 (4th Cir. 1996).

In addition, "absent the most extraordinary circumstances" a person who suffers only *de minimus* injury cannot prevail on an Eighth Amendment excessive force claim. Riley v. Dorton, 115

F.3d 1159 (4th Cir.) (en banc) cert. denied, 522 U.S. 1030 (1997); Norman, 25 F.3d at 1263. The Fourth Circuit has further found that a *de minimus* injury reveals that *de minimus* force was used. Norman, 25 F.3d at 1262. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimus* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Hudson, 503 U.S. at 9-10. However, if the force used is "repugnant to the conscience of mankind," *i.e.*, "diabolic" or inhuman physical punishment, a prisoner can prevail on an excessive force claim even if the injuries sustained are *de minimus.* Norman, 25 F.3d at 1263.

Drawing all reasonable inferences in the plaintiff's favor, the Court makes the following findings. The plaintiff was taken from his cell on September 24, 2008, by an extraction team. When the extraction team first attempted to take the plaintiff from his cell, the plaintiff struggled and possibly bit one of the officers. However, after possibly being pepper sprayed and being shackled and handcuffed, the plaintiff offered no further resistance. Despite the plaintiff's lack of resistance, once he was taken on his cell and placed in the elevator, defendant Graham hit, punched and kicked the plaintiff. Moreover, defendant Graham slammed the plaintiff's head off the elevator floor and walls. Once in the shower for decontamination, defendant Graham again kicked the plaintiff even though he was lying on the shower floor in leg shackles and handcuffs. Once the decontamination process was complete, the plaintiff was taken back to the elevator where his head was again slammed against the elevator floors and walls and he received multiple blows to his back and mid-section. As a result, the plaintiff suffers from unspecified physical injuries and mental and emotional injuries and there is no evidence at this time to support a finding that the plaintiff's

injuries were *de minimus*.[5]

The undersigned also finds that, during the extraction, defendant Smith operated the camera used to record the incident. When the plaintiff was taken into the elevator, defendant Smith did not accompany the extraction team. Moreover, defendant Smith was not present in the shower when the plaintiff was being decontaminated.

Taking these facts in the light most favorable to the plaintiff, the undersigned finds that the plaintiff has alleged sufficient facts to support his claim that defendant Graham violated his constitutional rights. After the plaintiff was subdued, shackled and handcuffed, there was no further threat to the extraction team. The fact that the plaintiff initially struggled with the officers and possibly bit one of them is largely irrelevant. The plaintiff admits to this behavior, but does not allege that the excessive force took place at that time. Instead, the plaintiff asserts that the excessive force occurred in the elevator and in the shower during decontamination, at a time when he was fully subdued and complacent. The defendants have provided no relevant evidence to contradict the plaintiff's allegations. Therefore, the Court must now examine whether defendant Graham maliciously and sadistically used force to cause harm.

Although counsel for defendant Graham asserts that he only applied the force reasonably necessary to control the situation, counsel provides no evidence in support of this claim. Noticeably missing is any institutional record of the event or a declaration or affidavit of defendant Graham or any other officer present at the time of the alleged force. Moreover, the undersigned notes with some significance that at the time of the alleged force, the plaintiff was one man, possibly pepper

---

[5] The defendants have not provided any affidavits of medical personnel who may have examined the plaintiff after the alleged incident or any of the plaintiff's medical records relevant to the time period of the alleged assault.

sprayed, in leg shackles and handcuffed.  It appears that he was pulled from his cell and escorted to decontamination by a "team" of officers.  Additionally, based on the severe nature of the force alleged by the plaintiff, it is reasonable to infer that the plaintiff suffered serious injury.  Thus, the evidence, as it currently stands, supports a reasonable inference that defendant Graham maliciously and sadistically used force to cause harm.  Accordingly, taking the facts in the light most favorable to the plaintiff, it appears that the amount of force used may not have been reasonable under the circumstances and the complaint states sufficient facts to show that the plaintiff's constitutional rights may have been violated.

However, those facts apply only to defendant Graham.  The plaintiff has failed to show how defendant Smith violated his constitutional rights.  Taking the facts in the light most favorable to the plaintiff, the plaintiff has not stated any set of facts which would implicate defendant Smith in the alleged violation of the plaintiff's Eighth Amendment rights.  By plaintiff's own statement of the facts, defendant Smith merely operated the camera used to record the extraction.  Defendant Smith was not present at the time of the alleged beatings, nor did he participate in them.  Accordingly, the plaintiff cannot state a claim against defendant Smith for excessive force and defendant Smith should be dismissed from this case with prejudice.

2.  <u>Defamation of Character</u>

In order to state a claim of defamation of character under West Virginia law, the plaintiff must show (1) defamatory statements; (2) a non-privileged communication to a third party; (3) falsity for reference to the plaintiff; (4) at least negligence on the part of the publisher; and (5) resulting injury.  <u>See</u> <u>Crump v. Beckley Newspapers, Inc.</u>, 173 W.Va. 699, 320 S.E.2d 70 (1983).  With regard to the plaintiff's defamation claim, the undersigned finds that the plaintiff has failed to

show that any of the alleged statements made by the defendants were either defamatory or false. In addition, the plaintiff has failed to show an injury resulting from the statements. Accordingly, the plaintiff cannot maintain his defamation claim against the defendants and that claim should be dismissed with prejudice.

## D.  Qualified Immunity

In excessive force cases, entitlement to qualified immunity must be analyzed in two steps taken in the proper sequence. Saucier v. Katz, 533 U.S. 194, 200 (2001). The threshold question requires a court to determine whether the facts, taken in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right. Id. at 201. If the Court finds that no constitutional right could have been violated based on the alleged facts, the plaintiff cannot prevail and the analysis ends. Id. However, if the Court finds that the facts alleged could show the violation of a constitutional right, the Court must proceed to the second step. The second step is "to ask whether the right was clearly established" at the time the alleged violation took place. Id. If not, then the defendant is entitled to qualified immunity and summary judgment is appropriate.

As set forth above, the undersigned has already determined that the plaintiff alleged sufficient facts to show that his constitutional rights may have been violated by the actions of defendant Graham. Moreover, it was unquestionably established at that time of the alleged incident, that a prisoner is protected from wanton beatings that exceed good faith efforts to restore order. See Whitley v. Albers, supra; Hudson v. McMillian, supra. Therefore, based on the facts alleged in this case, a reasonable officer in similar circumstances should have known that his conduct could violate the Constitution and defendant Graham is not entitled to qualified immunity.

**E.    The Defendants' Motion to Strike**

It is well-established that a court must liberally construct *pro se* pleadings.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  Moreover, because *pro se* individuals are unschooled in the law, it is the general practice of this Court to grant a *pro se* individual significant leeway in the manner and form of *pro se* filings.  Nonetheless, the Court maintains the authority to manage its docket.  In this instance, although the plaintiff's response is not authorized by the Local or Federal Rules of Civil Procedure, the undersigned does not believe that the Court should strike the response from the docket.  In addition, because the response does not present any new issue that the defendants have not already addressed in either their motion to dismiss, or their reply to the plaintiff's response, the undersigned finds it unnecessary for the defendants to file further response.  Thus, the undersigned believes that the defendants' motion to strike should be denied in its entirety.

## V.    Recommendation

For the foregoing reasons, the undersigned recommends that the defendants' Motion to Dismiss (dckt. 19) be **GRANTED in part** and **DENIED in part**.  Specifically, the defendants motion should be granted to the extent that it seeks the dismissal of defendants Stasny, Hyre, George, Mussi, Higgans and Fincham and those defendants should be dismissed **without prejudice**. Moreover, the motion should be granted to the extent that is seeks the dismissal of defendant Smith and defendant Smith should be dismissed **with prejudice**.  Finally, the motion should be granted to the extent that it seeks the dismissal of the plaintiff's defamation of character claim and that claim should be dismissed **with prejudice**.  However, to the extent that the motion seeks dismissal of defendant Graham for the failure to state a claim, or pursuant to the doctrine of qualified immunity, the motion should be denied.

Additionally, for the reasons set forth herein, the undersigned also recommends that the defendants' Motion to Strike (dckt. 31) be **DENIED** in its entirety.

Within ten (10) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to the plaintiff's last known address as shown on the docket, and to counsel of record via electronic means.

DATED: April 6, 2009.



DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE