```
IN THE UNITED STATES DISTRICT COURT
  FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**ANDRE WILSON,**

        **Plaintiff,**

v.                                      **CIVIL ACTION NO 1:08cv202**
                                                          **(Judge Keeley)**

**DELMOS GRAHAM, RICHARD STASNY**
**STEVEN HYRE, JAMES GEORGE,**
**MIKE MUSSI, DONALD HIGGANS,**
**STEVEN FINCHAM AND JAMES SMITH,**

        **Defendants.**

**MEMORANDUM OPINION AND ORDER**
**ADOPTING-IN-PART AND REJECTING-IN-PART**
**THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court for consideration is the Report and Recommendation ("R&R") (dkt no. 33) of United States Magistrate Judge David J. Joel dated April 6, 2009, which recommends that the Court grant-in-part and deny-in-part the defendants' Motion to Dismiss. For the reasons that follow, the Court **REJECTS** the recommendation to dismiss defendant James Smith ("Smith") from the case, and **ADOPTS** the remainder of the R&R.

**I. Facts and Procedural History**

On November 14, 2008, the plaintiff, Andre Wilson ("Wilson"), who is an inmate at Huttonsville Correctional Center ("HCC"), filed a pro se civil rights complaint alleging that correctional officers at HCC used excessive force against him in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

**WILSON V. GRAHAM**                                                    **1:08CV202**
**MEMORANDUM OPINION AND ORDER
ADOPTING-IN-PART AND REJECTING-IN-PART
THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Although the exact facts surrounding the incident are unclear, apparently on September 24, 2008, at approximately 9:30 a.m., the "E-1 Extraction Team" removed Wilson from his cell, where Wilson allegedly had broken a sprinkler head, punched a wall, and challenged officers to "come in and get me." While Wilson's Complaint does not specifically name the members of the extraction team, it does identify as defendants CO II Delmos Graham ("Graham"), Cpl. Richard Stasny ("Stasny"), Cpl. Steven Hyre ("Hyre"), Cpl. James George ("George"), CO II Mike Mussi ("Mussi"), CO II Donald Higgans ("Higgans"), Sgt. Steven Fincham ("Fincham"), and E-1 Counselor James Smith ("Smith").

Wilson denies some of the defendants' allegations but concedes that he initially resisted the officers, and possibly even bit one. He alleges that he was then handcuffed and shackled, removed from his cell, carried down the steps to a hallway, and finally taken by elevator to the medical floor for decontamination.[1]

Wilson alleges that, when they entered the elevator, Graham and other unnamed members of the extraction team hit him on his

---

[1] It is unclear why Wilson needed decontamination. In the R&R, Magistrate Judge Joel states: "It appears the extraction team used some sort of self-defense spray like mace or pepper spray on the plaintiff during the extraction." This Court finds no specific record of this allegation.

back and mid-section, knocked him down, and slammed his head against the floor of the elevator. He then contends Graham kicked him, and that, after the elevator stopped at the third floor medical unit, the team carried him into the shower, where they threw him onto the floor while Graham kicked his left leg and thigh. He also alleges that he was handcuffed and shackled throughout the transport, and, while in the shower, was forced to remain on the floor. He further contends that Graham said, "Take the cuffs off this pussy," at which point another correctional officer restrained Graham because Smith was recording the decontamination.

According to Wilson, after they decontaminated him, the team took him to the elevator, where they allegedly slammed his head against the elevator wall. He also asserts that Graham and other unnamed members of the extraction team inflicted multiple "blows" to his back and mid-section. He then claims that, after all of this, the team returned him to the segregation unit and placed him in a restraint cell.

Wilson contends that, although defendant Smith was responsible for video-recording all aspects of the extraction, including his transport to and from the decontamination unit, Smith inexplicably failed to ride in the elevator on the trips to and from the

3

decontamination/medical floor, and did not record his beatings. While it is unclear exactly when Smith returned to the team, Wilson alleges that it was during Smith's absence that the extraction team, and Graham specifically, inflicted unnecessary violence and pain upon him. Wilson asserts that this behavior was a form of revenge. Finally, Wilson contends that, after he filed his grievances, Graham and the other defendants told other inmates that Wilson was a "snitch" and a "baby raper," terms that are derisive and derogatory in prison culture.

### A. Defendants' Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the defendants have moved to dismiss Wilson's Complaint for failure to state a claim for which relief may be granted (dkt. no. 19). In support of their motion, they assert that Wilson failed to make specific allegations against defendants Stasny, Hyre, George, Mussi, Higgans, and Fincham. They further contend that Wilson's allegations against Smith are insufficient to state even a _prima facie_ claim of excessive force. Additionally, they contend that (1) Wilson failed to exhaust his administrative grievance remedies; (2) he cannot factually support his defamation of character claim;

(3) the defendants did not use excessive force; and (4) the defendants are entitled to qualified immunity.

Wilson's response disputes the factual basis for the defendants' motion. He denies punching a wall or breaking a sprinkler head; nevertheless, he agrees to the dismissal without prejudice of defendants Sasny, Hyre, George, Mussi, Higgans, and Fincham. He does, however, contest Smith's dismissal, arguing that the incident occurred because Smith failed to fulfill his responsibility to videotape the entire extraction/decontamination procedure. Wilson asserts that he has fully exhausted the administrative process, and realleges that Graham used excessive force against him and also defamed his character. Finally, he asserts that the defendants are not entitled to qualified immunity.

After the defendants replied to Wilson's response, reiterating their earlier arguments, Wilson filed a sur-reply, entitled "Opposition Motion to the Defendants' Motion to Dismiss," in which he contends that his Complaint sufficiently states a claim for excessive force and defamation of character against Smith and Graham. As well, he reiterates that he has exhausted all internal administrative remedies. The defendants opposed Wilson's sur-reply in a "Motion to Strike Plaintiff's Opposition Motion to Defendants'

Motion to Dismiss" (dkt. no. 31), which asserts that Wilson's "Opposition Motion" should be disregarded because it violates the Local Rules and the Federal Rules of Civil Procedure. Alternately, they request the opportunity to file an additional reply should the Court not strike Wilson's sur-reply.

**B. Magistrate Judge Joel's Report and Recommendation**

In accordance with Local Rule of Prisoner Litigation ("LRPL") 83.02 et seq., the Court referred this matter to Magistrate Judge Joel for preliminary review pursuant to 28 U.S.C. §§ 1915(e) and 1915A. In his R&R, Magistrate Judge Joel analyzed 1) whether Wilson had exhausted his administrative remedies, 2) whether defendants Stasny, Hyre, George, Mussi, Higgans and Fincham should be dismissed, 3) whether allegations about Smith and Graham's alleged use of excessive force, and Wilson's subsequent allegations of defamation of his character, had been sufficiently pleaded, 4) whether Graham was qualifiedly immune from suit, and 5) whether it should grant the defendants' motion to strike the plaintiff's "opposition motion" to their motion to dismiss.

On the issue of whether Wilson had exhausted his administrative remedies, Magistrate Judge Joel found that, because Wilson had attached copies of administrative filings purporting to

show he had exhausted all available remedies, and because the defendants had failed to file contrary evidence, their motion to dismiss should be denied to the extent it suggested any failure by Wilson to exhaust his administrative remedies.

As to the dismissal without prejudice of six of the defendants, given Wilson's acquiescence, Magistrate Judge Joel recommended that those defendants, Stasny, Hyre, George, Mussi, Higgans and Fincham, be dismissed without prejudice.[2] As to Wilson's claims of excessive force involving Smith and Graham, Magistrate Judge Joel recommended that Graham was not entitled to qualified immunity and Wilson's claim against him should proceed. He noted that, under Norman v. Taylor, Wilson's allegations, if true, would establish a use of force by Graham that was "repugnant to the conscience of mankind," "malicious" and "sadistic." 25 F.3d 1259 (4th Cir. 1994) (en banc) cert. denied, 513 U.S. 1114 (1995).

With regard to Smith's alleged failure to record the entirety of Wilson's extraction from his cell through his decontamination, Magistrate Judge Joel found that Wilson's allegations did not state a claim for excessive force and recommended that Smith be dismissed

---

[2] The Court notes that although the Magistrate Judge listed Hyre in the heading of this specific decision, in the R&R, Hyre appears to be inadvertently excluded from the discussion that follows.

with prejudice. Additionally, he found that Wilson could not maintain his defamation claim against any of the defendants and recommended dismissing that claim as well. Finally, while acknowledging the defendants' right to file a motion to strike the Plaintiff's Opposition Motion to the Defendants' Motion to Dismiss, Magistrate Judge Joel liberally construed Wilson's pro se pleadings and recommended that Wilson's response be considered in spite of the fact that it violated both the Local Rules, and also the Federal Rules of Civil Procedure. He therefore recommended that the Court deny the defendants' Motion to Strike and grant Wilson's motion to supplement his objection.

### C. Wilson's Objections

Wilson filed a timely objection to Magistrate Judge Joel's R&R, objecting only to the recommendation to dismiss his claim against Smith. Shortly thereafter, on May 18, 2009, Wilson moved to supplement the legal support for his objection, arguing that the Magistrate Judge should have analyzed Smith's actions under the standard of deliberate indifference.

In urging the Court to reject the Magistrate Judge's recommendation to dismiss Smith as a defendant, Wilson contends that, because Smith was not present at the time of the alleged

beatings and did not actively participate in them, he cannot be evaluated under the malicious and sadistic use of force to cause harm standard,[3] but instead should be evaluated under the standard of deliberate indifference. Wilson suggests Smith's strategic absence at certain times during the extraction and decontamination warrants further examination, and that his injuries were a direct result of Smith's deliberate indifference.

### D. Defendant Smith's Response to the Plaintiff's Objections to the Magistrate Judge's R&R

Smith contends that the Magistrate Judge's recommendation to dismiss him with prejudice is both appropriate and sound because Wilson's only allegation against him, that he failed to videotape Wilson inside the elevator and in the shower during decontamination, is insufficient as a matter of law to state a claim of deliberate indifference. According to Smith, Wilson did not allege a claim of deliberate indifference in his original Complaint and, even if Wilson could objectively establish that he was deprived of a sufficiently serious, basic human need, he cannot show that Smith disregarded his health or safety. To define

---

[3] According to Wilson, Smith was present when Graham had to be restrained by other members of the extraction team. When Smith walked away, he was aware that Graham was not in control of himself.

deliberate indifference, Smith cites <u>De'Lonta v. Angelone</u>, 330 F.3d 630, 634 (4th Cir. 2003), which states:

> "Deliberate indifference entails something more than mere negligence...but, is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. It requires that a prison official knows of and disregards an objectively serious condition, medical need, or risk of harm."

Finally, Smith reasserts that he did not ride in the elevator because there was not enough room.

## II. STANDARD OF REVIEW

Courts liberally construe <u>pro se</u> complaints that raise civil rights claims. <u>Gordon v. Leeks</u>, 574 F.2d 1147, 1151 (4th Cir. 1978). However, even under such a liberal standard, courts have the authority to dismiss actions that are frivolous or malicious, or that fail to state a claim for which relief can be granted. 28 U.S.C. § 1915(e)(2)(B). A claim is not frivolous as long as enough facts are pled to state a claim for relief that is "'plausible on its face.'" <u>Ashcroft v. Iqbal</u>, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009) (<u>quoting</u> <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). Further, once a claim has been adequately stated, it may be supported by showing any set of facts "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> at 1949 (<u>citing</u> <u>Twombly</u>, 550 U.S. at

556). A claim must be dismissed, however, if it is merely conceivable and fails to cross "'the line from conceivable to plausible.'" Id. at 1950-51 (quoting Twombly, 550 U.S. at 570).

### III. LEGAL ANALYSIS

The Court reviews de novo any portions of an R&R to which a specific objection is made. 28 U.S.C. § 636(b)(1). It may adopt, without explanation, any of the recommendations to which the prisoner does not object. Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983). Consequently, the Court **ADOPTS** the recommendations in the Magistrate Judge's R&R to which Wilson has not objected and **DISMISSES WITHOUT PREJUDICE** defendants Stasny, George, Hyre, Mussi, Higgans, and Fincham, **DISMISSES WITH PREJUDICE** Wilson's defamation of character claim, and **DENIES** the defendants' Motion to Strike or, in the alternative, to file further briefs and **GRANTS** Wilson's motion to supplement his legal analysis. The Court turns now to Wilson's objection to the Magistrate Judge's recommendation that Smith be dismissed, which it reviews de novo.

**A.    Personal Capacity-Sufficient Pleading**

To establish his § 1983 claim, Wilson must allege that a specific defendant personally caused or played a role in depriving him of a federal right. West v. Atkins, 487 U.S. 42 (1988); Gomez

11

v. Toledo, 466 U.S. 635, 640 (1980). Accordingly, a § 1983 complaint must contain specific factual allegations demonstrating the involvement of individual defendants. A careful review of Wilson's Complaint demonstrates that it contains such allegations against Smith.

### B. Smith's Alleged Actions Constitute an Eighth Amendment Violation

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312, 318 (1986). Any plaintiff claiming a violation of his Eighth Amendment rights must prove that (1) objectively, he was deprived of a basic human need that was "sufficiently serious," and (2) subjectively, the offending individual acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). Often, prisoners allege mistreatment or question conditions of their confinement, and these allegations are subject to scrutiny under the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 832 (1994).

Incarcerated individuals are subjected to cruel and unusual punishment forbidden by the Eighth Amendment only when pain is "unnecessarily and wantonly" inflicted. Ingraham v. Wright, 430 U.S. 651, 670 (1977). Often, prison officials stand accused of violating the Eighth Amendment based on alleged use of excessive

physical force. Hudson v. McMillian, 503 U.S. 1 (1992). Excessive force is evaluated by a two-pronged test. Id. First, the plaintiff must show that the "alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Norman, 25 F.3d at 1262 (quoting McMillian, 503 U.S. at 1). Subjectively, the plaintiff must show that the prison official "maliciously and sadistically used force to cause harm." McMillian, 503 U.S. at 9; Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

Additionally, absent extraordinary circumstances, an individual suffering de minimus injury cannot prevail under a claim of excessive force as, ordinarily, de minimus injury reveals that de minimus force was used. Riley v. Dorton, 115 F.3d 1159, 1166 (4th Cir. 1997)(en banc) cert. denied, 522 U.S. 1030 (1997). If, however, the force used is "repugnant to the conscience of mankind," a prisoner can prevail on an excessive force claim even if his injuries are de minimus. McMillian, 503 U.S. at 9-10; Norman, 25 F.3d at 1263.

Even when a prison official is not accused of excessive force, he may still be liable under the Eighth Amendment for failing to "take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984). Knowing of, but disregarding, an excessive risk to an inmate's health or safety is

referred to as deliberate indifference. Farmer, 511 U.S. at 837. If a prison official voluntarily fails to act, he does so deliberately. Farmer, 511 U.S. at 839, citing Estelle v. Gamble, 429 U.S. 97, 105 (1976) (distinguishing "deliberate indifference" from "accident" or "inadverten[ce]"). Unlike a claim of excessive force, which requires physical contact between parties, a claim of deliberate indifference is viable if the plaintiff can show the defendant acted, or failed to act, despite knowledge of a substantial risk of serious harm. Farmer, 511 U.S. at 842.

"[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835. Thus, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. To survive a claim of deliberate indifference, the official must prove that he took reasonable measures to guarantee the inmate's safety. Id. at 832.

In his R&R, the Magistrate Judge correctly evaluated Wilson's claims against Graham under the "malicious and sadistic" standard, because Graham allegedly inflicted physical harm on Wilson. He correctly concluded that Wilson's claims against Smith, who, as a

member of the extraction team, merely operated the video camera, could not be evaluated under the excessive force standard because his alleged involvement did not include claims of physical harm.

By not evaluating Smith's actions under the alternate standard of deliberate indifference, the Magistrate Judge failed to properly weigh Wilson's allegations that Smith either did not intervene to protect Wilson or, by making himself absent, provided Graham with the opportunity to inflict physical harm on Wilson. In a factually similar case, Buckner v. Hollins, 983 F.2d 119 (8th Cir. 1993), the Eighth Circuit held that indirect participation cannot be evaluated under a malicious and sadistic standard, but instead should be evaluated under a standard of deliberate indifference for failure to intervene.

In Buckner, a prison official, Veltrop, placed an inmate, Buckner, in solitary confinement because he had been violent during transport. Veltrop alone possessed the keys to Buckner's cell. Id. at 121. When Veltrop provided Hollins, another prison official, with access to Buckner's cell, and Buckner was beaten, Veltrop's act of opening the prison cell and walking away was evaluated under a standard of deliberate indifference. Id. The Eighth Circuit held that Veltrop's failure to intervene contributed

to the unnecessary and wanton infliction of pain upon Buckner. Id. at 123.

Here, Wilson's Complaint alleges that Smith, who was responsible for videotaping Wilson's extraction/decontamination, turned off his camera and left Wilson on at least two occasions during his extraction and transport. Whether Smith was required to be present throughout the extraction/decontamination is a question of fact yet to be developed. Moreover, as Wilson contends, additional factual questions exist as to why Smith was not present during the elevator ride. Although it is well-documented that the elevator's capacity was limited to six individuals, a question remains regarding who should have been in the elevator and how the decision that Smith would leave was made.

Under the pleading rule articulated in Iqbal and Twombly, courts must consider the strength of the alleged facts in relation to the claims. Iqbal, 129 S.Ct. at 1950. If Wilson's factual allegations lead to a merely conceivable, rather than plausible, claim, the Court must deny his objection. See id. Here, Wilson's allegation that Smith absented himself in order to create an opportunity for Graham to beat Wilson is plausible. Indeed, if proven, Wilson's allegations are sufficient under the standard of

deliberate indifference to implicate Smith in the incident leading to Wilson's alleged injuries.

## VI. CONCLUSION

For the reasons stated, therefore, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the defendants' motion to dismiss (dkt. no. 19), **ADOPTS-IN-PART** the Magistrate Judge's April 6, 2009 Report and Recommendation (dkt. no. 33), **DISMISSES WITHOUT PREJUDICE** defendants Stasny, Hyre, George, Mussi, Higgans and Fincham, **DISMISSES WITH PREJUDICE** Wilson's defamation of character claim, **REJECTS** the recommendation to dismiss Defendant Smith, **DENIES** the defendant's Motion to Strike or, alternatively, to file further briefs (dkt. no. 31), **GRANTS** Wilson's motion to supplement his objection (dkt. no. 36) and **REFERS** the matter to Magistrate Judge Joel for further proceedings consistent with this Order.

It is so **ORDERED.**

The Court directs the Clerk to mail a copy of this Order to the pro se plaintiff via certified mail, return receipt requested, and to counsel of record.

DATED: July 7, 2009

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE