# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


**ANDRE WILSON,**

        **Plaintiff,**

**v.**                                      **Civil Action No. 1:08cv202**
                                                  **(Judge Keeley)**

**DELMOS GRAHAM, RICHARD
STASNY, STEVEN HYRE, JAMES
GEORGE, MIKE MUSSI, DONALD
HIGGANS, STEVEN FINCHAM
AND JAMES SMITH,**

        **Defendants.**

## REPORT AND RECOMMENDATION

### I.  Procedural History

The *pro se* plaintiff initiated this action on March 14, 2008, by filing a civil rights complaint against the above-named defendants pursuant to 42 U.S.C. § 1983. In the complaint, the plaintiff alleges that the defendants violated his constitutional rights. Specifically, he alleges claims of excessive force, deliberate indifference and defamation of character.

On December 18, 2008, the undersigned conducted a preliminary review of the complaint, found that summary dismissal was not warranted at that time, and directed the defendants to file an answer. On January 8, 2009, the defendants filed a motion to dismiss the complaint. Because the plaintiff is proceeding without counsel in this case, a <u>Roseboro</u> Notice issued on January 15, 2009. The plaintiff filed his response to the motion on February 4, 2009, and the defendants filed their reply on February 10, 2009.

On April 6, 2009, the undersigned issued a Report and Recommendation ("R&R")

recommending that the defendants' motion be granted in part and denied in part. More specifically, the undersigned recommended that the defendants' motion be granted to the extent it sought dismissal of the plaintiff's claims against defendants Stasny, Hyre, George, Mussi, Higgans, Fincham and Smith. It also recommended the dismissal of the plaintiff's defamation of character claim. However, with respect to the plaintiff's excessive force claim against defendant Graham, the undersigned recommended that the motion to dismiss be denied.

On April 20, 2009, the plaintiff filed objections to the R&R, objecting only to the R&R's recommendation that Smith be dismissed as a defendant. Because the plaintiff did not object to the recommendation that defendants Stasny, George, Hyre, Mussi, Higgans and Fincham be dismissed, the District Judge adopted the R&R in that respect. For the same reason, the District Judge adopted the recommendation that the plaintiff's defamation of character claim be dismissed and that his claims against Graham proceed. After conducting a *de novo* review of the plaintiff's claims against Smith, the District Judge rejected the R&R to the extent that it recommended defendant Smith be dismissed as a defendant. Therefore, the case was referred back to the undersigned for further proceedings.

In light of the findings of the District Judge, on July 8, 2009, the Court issued a First Order and Notice Regarding Discovery and Scheduling. After a brief extension of time, the parties were directed to complete discovery by January 5, 2010 and file all dispositive motions by February 4, 2010.

On January 27, 2010, the plaintiff filed a Motion for Summary Judgment as to defendant Smith. The defendants filed a response on February 9, 2010 and the plaintiff filed his reply on February 19, 2010.

On February 4, 2010, the defendants filed a Motion for Summary Judgment. The plaintiff filed his response on February 16, 2010, and the defendants filed a reply on February 23, 2010. On March 5, 2010, the plaintiff filed an unauthorized surresponse.

This case is before the undersigned for a report and recommendation on the pending motions for summary judgment.

## II.   Contentions of the Parties

### A.   The Complaint

In the complaint, the plaintiff alleges that defendant Graham used excessive force against him in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. In support of this claim, the plaintiff asserts that on September 24, 2008, he was extracted from his cell. The plaintiff concedes that he initially resisted the extraction and even that he bit defendant Graham during the struggle. After he was handcuffed and shackled, the plaintiff alleges that he was removed from his cell, carried down the steps to a hallway, and taken by elevator to a shower in the decontamination unit. The plaintiff asserts that after he was handcuffed and shackled, he was not resisting the officers and posed no threat to any of them. Nonetheless, the plaintiff asserts that once they entered the elevator, defendant Graham hit him in the back and mid-section, slammed him into the floor and banged his head against the elevator floor and walls. Once in the decontamination unit, defendant Graham allegedly kicked the plaintiff's left leg and thigh as the plaintiff was lying on the shower floor in shackles and handcuffs.

As to defendant Smith, the plaintiff asserts that Smith controlled the camera used to record the cell extraction and subsequent events. The plaintiff does not assert that Smith participated in the alleged abusive behavior, but instead, that Smith did not videotape the entire extraction, and in fact,

strategically failed to ride in the elevator and record certain portions of the decontamination so as to allow Graham the opportunity to physically abuse the plaintiff.

After the decontamination, the plaintiff asserts that the extraction team took him back to the elevator to transport him to the segregation unit. The plaintiff asserts that Smith again failed to ride on the elevator allowing Graham another opportunity to inflict multiple blows to his back and mid-section. Eventually, the plaintiff arrived in the segregation unit where he was placed in a restraint cell.

**B.** **The Plaintiff's Motion for Summary Judgment**

1.    The Motion

In his motion, the plaintiff seeks summary judgment against defendant Smith. In support of this request, the plaintiff asserts that there are no issues of material fact as to Smith's part in the alleged violation of his constitutional rights and that he is therefore entitled to judgment as a matter of law. Specifically, he asserts that there is no dispute that Smith was the camera operator for the cell extraction. Additionally, the plaintiff asserts that there is no dispute that Smith failed to videotape the elevator rides and that Smith stopped taping for a brief time in the decontamination room to let in a nurse. The plaintiff asserts that there is no dispute that Smith's actions violated DOC policy, which requires the videotaping of the "entire extraction." Moreover, the plaintiff asserts that at the very least the undisputed facts establish that Smith's failure to adhere to policy created the opportunity for the correctional officers to assault him in blatant disregard for his safety. At their worst, the plaintiff asserts that the undisputed facts establish that Smith "strategically set up the moments when he was unavailable with the camera," purposely allowing the assaults to happen. Motion (dckt. 101) at 14.

2.    The Defendants' Response

In his response, defendant Smith asserts that he is a civilian counselor at the Huttonsville Correctional Center.  He is not a trained correctional officer and he is not armed.  Smith asserts that he had never been directly involved with a cell extraction before September 24, 2008, and admits that it was his job to videotape the plaintiff's cell extraction on that date.  Smith concedes that he videotaped the entire extraction to the extent that the plaintiff was actually removed from his cell. He also admits that he videotaped portions of the extraction to the extent that the plaintiff was carried to the elevator, taken to the decontamination unit and placed in segregation.  Smith contends that he believed DOC policy only requires the videotaping of an inmate's actual removal from his cell and not what follows.  However, because he was unsure, Smith contends that he continued videotaping the event after the plaintiff was removed from his cell and that he therefore followed DOC policy to the best of his knowledge and ability.

As to the first elevator ride, Smith asserts that the elevator holds only a limited number of people and that he was told by the correctional officers that there was not enough room for him on the elevator and that he should take the stairs.  Smith asserts that he did not know exactly where the officers took the plaintiff but again began videotaping when he found them in the decontamination unit.  Additionally, Smith admits that while in the decontamination unit, he turned off the video camera to open the door for a nurse.  Moreover, Smith agrees that the undisputed facts establish that summary dismissal is appropriate.  However, he asserts that those facts establish he is entitled to judgment as a matter of law, not the plaintiff.

More specifically, Smith argues that, in order to state a claim of deliberate indifference, the plaintiff must show that his actions were more than an accident or mere inadvertence.  Response

(dckt. 107) at 4 (citing <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976)). In addition, Smith asserts that the plaintiff must show that he acted with a "sufficiently culpable state of mind." <u>Id.</u> (citing <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994)). In this case, Smith asserts that the undisputed facts do not establish that he acted with a culpable state of mind. Thus, Smith asserts that although he agrees summary judgment is appropriate in this case, judgment should be granted in his favor rather than the plaintiff's.

3. <u>The Plaintiff's Reply</u>

In his reply, the plaintiff asserts that DOC Policy Directive 313.02 requires that a use of force team shall be videotaped in its entirety, including the initiation, move, continued restraint and medical assessment and treatment of the inmate. Thus, the plaintiff contends that Smith's admitted failure to videotape all of the events surrounding his extraction is a clear violation of policy. The plaintiff further contends that Smith's assertions that it was his first extraction and first time operating the video camera are self-serving and irrelevant. The plaintiff asserts that Smith should have known that continuously walking away from the plaintiff and the extraction team would be in violation of the policy and would allow the officers the opportunity to "exact revenge."

Moreover, the plaintiff asserts that applying the standard set forth by defendant Smith, summary judgment is clearly appropriate. The plaintiff asserts that the undisputed facts show that Smith violated policy, that his actions were more than an accident or inadvertence and that Smith had the requisite state of mind. The plaintiff has already explained why he believes Smith clearly violated policy. As to the inadvertence of Smith's actions, the plaintiff asserts that there was no reason why Smith should not ride on the elevator. To the extent that Smith argues capacity, the plaintiff asserts that he was shackled and handcuffed and no threat at that time. Therefore, there was

no reason why Smith should have been left off the elevator rather than one of the correctional officers. In addition, the plaintiff asserts that in the decontamination unit, there were five or six officers in the room. Thus, there was no reason for Smith to be the one to open the door for the nurse.

Finally, the plaintiff asserts that after the decontamination, he was escorted to the elevators by two of the members of the extraction team. Smith again failed to accompany the plaintiff and the extraction team members on the elevator as he was taken to the segregation unit. In the elevator for the second time, the plaintiff asserts that he was again assaulted by defendant Graham. The plaintiff contends that there was no reason for Smith not to be on the elevator the second time, as only two members of the extraction team were escorting him at this time. The plaintiff asserts that these facts show that Smith's actions were deliberate, rather than accidental.

For these same reasons, the plaintiff asserts that these facts establish that Smith acted with a culpable state of mind. Moreover, the plaintiff asserts that Smith's blatant violation of DOC policy shows a careless and reckless disregard for his duties, also establishing a culpable state of mind.

## B. The Defendants' Motion for Summary Judgment

### 1. The Motion

In their motion for summary judgment, the defendants assert that they are entitled to judgment as a matter of law. As to defendant Graham, the defendants assert that because the plaintiff's injuries are *de minimis*, only *de minimis* force, consistent with a cell extraction, was used. In addition, the defendants assert that there is nothing in the record to support the plaintiff's self-serving allegation that he was subjected to excessive force. As to defendant Smith, the defendants reiterate the claims raised in their response to the plaintiff's summary judgment motion.

2.     The Plaintiff's Response

In his response, the plaintiff asserts that a lack of serious physical injury does not necessarily preclude his claims. Instead, the plaintiff asserts that to establish a claim of excessive force, he only has to show that an injury was inflicted upon him with the intent to cause harm. If, the plaintiff asserts, there is a question as to whether the alleged violation involved the unnecessary and unwanton infliction of pain, then summary judgment is not appropriate. In other words, the plaintiff argues that "when prison officials maliciously and sadistically use force to cause harm[,] contemporary standards of decency are always violated. This is true whether or not significant injury is evident." Response (dckt. 110) at 6.

As to defendant Smith, the plaintiff reiterates the claims made in his motion for summary judgment.

3.     The Defendants' Reply

In their reply, the defendants assert that the plaintiff has failed to provide the court with any evidence to overcome their motion for summary judgment. The defendants assert that the plaintiff's response merely reiterates claims he has previously raised. The defendants assert that the plaintiff has simply failed to show that there is a genuine issue for trial and restate their request for judgment as a matter of law.

In addition, the defendants contend that because the plaintiff has failed to show that his injuries were more than *de minimis*, the Court can infer that only *de minimis* force was used. The defendants assert that the plaintiff has failed to supply any evidence to contradict their contention that his injuries were *de minimis*. Moreover, the defendants point out that the plaintiff was involved in a second cell extraction that same day. The defendants also contend that the plaintiff's assertions

that he was treated sadistically are simply not plausible. Nonetheless, they also assert that there is at least some measure of justification for the use of force in this case and that a *de minimis* injury may be found to be diabolical and sadistic only when there is a total absence of the necessity of force. Additionally, the defendants assert that the cases cited by the plaintiff are not controlling in this Court and cannot overcome their motion for summary judgment.

As to Smith, the defendants assert that, in order to defeat their claim of summary judgment, the plaintiff must establish that Smith had the requisite state of mind. In that respect, the defendants assert that, "there is simply no showing that Smith was aware that Officer Graham intended to subject the plaintiff to excessive force. To draw an inference that his failure to ride on the elevator or to stop videotaping to allow nurses to access the plaintiff that created a substantial risk of harm is simply not available. There is no information for which the Court to draw this inference." Reply (dckt. 112) at 7.

4. The Plaintiff's Surresponse

This document is not authorized under either the Federal Rules of Civil Procedure or the Local Rules of Civil Procedure. Nor did the plaintiff seek permission to file a surresponse. Thus, the undersigned declines to consider the issues raised therein.

## III.  Standard of Review

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the

nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

## IV.   Analysis

### A.   Defendant Graham - Excessive Force

In general, the Eighth Amendment prohibits "cruel and unusual punishment." Farmer v. Brennan, 511 U.S. 825 (1994). The cruel and unusual punishment clause of the Eighth Amendment applies to the States through the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See Wilson v. Seiter, 501 U.S. 294 (1991).

In order to comply with the Eighth Amendment, prison punishment must comport with "the evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102 (1976). "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. at 837.

Moreover, while courts should give deference to a jail official's determination of what measures are necessary to maintain discipline and security, "the unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment which is prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 321-22 (1986). In order for a plaintiff to prove a claim of excessive force, the plaintiff must first establish that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Norman v. Taylor, 25 F.3d 1259, 1262 (4th Cir.1994) (en banc), cert. denied, 513 U.S. 1114 (1995)(quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)). Second, the plaintiff must show that the prison officials inflicted unnecessary and wanton pain and suffering. Hudson, 503 U.S. at 6; Williams v. Benjamin, 77 F. 3d 756 (4th Cir. 1996).

With regard to prison disturbances, whether unnecessary and wanton pain and suffering was inflicted "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21. In determining whether the defendant acted maliciously and sadistically, the following factors should be balanced: (1) "the need for application of force"; (2) "the relationship between the

need and the amount of force that was used"; (3) "the extent of the injury"; (4) the threat reasonably perceived by the responsible official; and (5) "any efforts made to temper the severity of a forceful response." Id. at 321; see also Williams, 77 F. 3d at 762.

Moreover, in the Fourth Circuit, "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis.*" Norman, 25 F.3d at 1263.[1]  A *de minimis* injury reveals that *de minimis* force was used. Id. at 1262. However, the Fourth Circuit has also acknowledged that in certain circumstances a claim may be made even if the injury is *de minimis.*   Specifically, the Fourth Circuit has stated:

> There may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain.   *Cf.* Hudson, 503 U.S. at ----, 112 S.Ct. at 1000 ("diabolic" or "inhuman" physical punishment unconstitutional, regardless of injury).   In these circumstances, we believe that either the force used will be "of a sort 'repugnant to the conscience of mankind,'and thus expressly outside the *de minimis* force exception," see Hudson, 503 U.S. at ----, 112 S.Ct. at 1000 (citations omitted), or the pain itself will be such that it can properly be said to constitute more than *de minimis* injury.

Norman, at 1264, n. 4.

With regard to the plaintiff's claims against defendant Graham, the following facts are not in dispute:

(1) The plaintiff was removed from his cell on September 24, 2008, by an extraction team

---

[1]  In Norman, a jail officer began swinging his cell keys in the direction of the prisoner's face when the prisoner became disruptive.  The prisoner asserted that he put his hands up to cover his face, and the keys hit his right thumb causing his right hand to swell.  The Court ruled that the prisoner sustained *de minimis* injuries proving that *de minimis* force was used.

Further, the Fourth Circuit found in Taylor v. McDuffie, 155 F.3d 479 (4th Cir. 1998), cert. denied, 525 U.S. 1181 (1999), that the detainee's medical records revealed that as a result of the incident, the detainee suffered from "abrasions on his wrists and ankles, slight swelling in the jaw area, tenderness over some ribs and some excoriation of the mucous membranes of the mouth" and that such injuries were *de minimis.*

On the other hand, the United States Supreme Court has found that "bruises, swelling, loosened teeth and a cracked dental plate" are not *de minimis.* Hudson 503 U.S. at 10.

which included defendant Graham.

(2) The plaintiff was extracted from his cell because he failed to comply with security related instructions and had self-inflicted wounds to his right hand from hitting the cell door with a clenched fist.  Dckt. 104 at Ex. M (Affidavit of Steve Fincham).

(3) The plaintiff initially resisted the extraction, bit defendant Graham and injured another officer in the tricep area of his right arm and in his groin.  Id. (Affidavit of Richard Stasny).

(4)  The plaintiff was carried from his cell, placed on an elevator and taken to a decontamination unit.

(5)  In the decontamination unit, the plaintiff was examined by medical staff.

(6)  Medical staff found no injuries or wounds which could be considered more than superficial.  Dckt 104 at Ex. A.

(7)  The plaintiff was taken from the decontamination room, placed on an elevator and delivered to the segregation unit where he was placed in four point restraints.

(8)  Once in restraints, the plaintiff was again evaluated by medical staff.

(9)  When so assessed, the plaintiff failed to complain of any distress and staff found no need for first aid or for further medical treatment.  Id. at Ex. C-E.

Accepting the facts as stated in the complaint as true, while in the elevator for the first time, defendant Graham hit the plaintiff in his back and mid-section, slammed him into the floor and banged his head against the elevator floor and walls.  Later, in the decontamination unit, defendant Graham kicked the plaintiff's left leg and thigh as the plaintiff was lying on the shower floor.  Finally, during the second elevator ride, Graham again inflicted multiple blows to the plaintiff's

back and mid-section.[2] Despite the vicious attack described by the plaintiff, he admittedly suffered no more than some scratches and lacerations which required no medical attention. Id. at Ex. E.

Here, the lack of physical injury make the plaintiff's allegations implausible. The *de minimis* injuries suffered by the plaintiff reveal that *de minimis* force was used. The injuries described by the plaintiff, and noted by medical staff, are merely consistent with the reasonable amount of force needed to subdue an unruly and aggressive inmate. Moreover, the plaintiff has failed to show any highly unusual circumstances which would place his claims outside the *de minimis* force exception. Accordingly, the undisputed facts show that the plaintiff cannot establish a claim of excessive force and defendant Graham is entitled to judgment as a matter of law.

**B.    Defendant Smith - Deliberate Indifference to the Plaintiff's Safety**

A prison official may be liable under the Eighth Amendment for failing to "take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-527 (1984). A claim of deliberate indifference may be established if the plaintiff can show that the defendant acted, or failed to act, despite knowledge of a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. at 842. Deliberate indifference is more than mere negligence. Id. at 835. Instead, a plaintiff must show that the acts or omissions were done with "the very purpose of causing harm or with knowledge that harm will result." Id. Therefore, the prison official "must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must

---

[2]Defendant Graham, as well as other members of the extraction team, dispute the plaintiff's allegations of excessive force. In sworn affidavits, they assert that neither Graham, nor any other member of the extraction team, kicked or punched the plaintiff or used any more force than what was necessary to gain control of a physically aggressive inmate who refused to comply with commands. Dckt. 104 at Ex. L & M. However, because the plaintiff's excessive force claim is currently before the Court upon the defendant's motion for summary judgment, the Court will accept as true, the allegations as stated in the complaint.

also draw the inference." Id. at 837.

With regard to the plaintiff's claims against defendant Smith, the following facts are not in dispute:

(1) Defendant Smith was a counselor at the Huttonsville Correctional Center on September 24, 2008. Dckt. 104 at Ex. H (Affidavit of James Smith).[3]

(2) Defendant Smith is not a uniformed officer, does not carry weapons and has not been trained to subdue inmates. Id.

(3) Prior to September 24, 2008, Smith had never participated in a cell extraction in any form. Id.

(4) On that date, Smith was asked to videotape the plaintiff's cell extraction. Id.

(5) This was the first time Smith had ever videotaped a cell extraction. Id.

(6) At that time, Smith believed an extraction was complete upon the inmate's removal from his cell. Id.

(7) Because he was not sure, however, he continued to videotape the plaintiff's extraction past the time the plaintiff was removed from his cell. Id.

(8) Cell extractions are governed by DOC policies 313.02 and 314.02.

(9) Policy number 314.02 – Videotaping of Cell Extractions – states that a cell extraction is the "removal of an inmate from his/her cell by designated Division of Corrections's staff," and without exception, requires that "[t]he entire cell extraction" be videotaped.

(10) Policy number 313.02 – Calculated Use of Force – states that when the calculated use of force is necessary, deployment of the use of force team "shall be videotaped," this

---

[3]The plaintiff does not dispute or object to a single aspect of defendant Smith's affidavit.

includes initiation, housing move, continuing restraint and medial assessment and treatment. The policy specific states: "ALL ACTIONS SHALL BE VIDEOTAPED."

(11)  Smith videotaped the plaintiff's actual removal from his cell.

(12)  Smith did not see the plaintiff bite defendant Graham.  Dckt. 104 at Ex. H.

(13)  The first time the plaintiff was placed on the elevator, the uniformed officers told Smith to take the stairs because he was not a trained officer.  Id.

(14)  Smith was not sure of the exact location of the decontamination unit, but once there, began filming again immediately.  Id.

(15)  As he was filming in the decontamination unit, a nurse knocked on the door and requested permission to enter, for the purpose of providing medical care to the plaintiff.  Id.

(16)  Smith stopped taping to allow the medical professionals into the area.  Id.

(17)  At no time during the extraction or the events following, did Smith hear any member of the extraction team say they were going to harm the plaintiff.  Id.

From the undisputed facts, it is not clear what the DOC policy is with regard to the videotaping of a cell extraction.  Under the policy actually governing cell extractions (Policy number 314.02), a cell extraction is defined as the "removal of an inmate from his/her cell."  Thus, under this policy, it appears that only the actual removal of the inmate from his cell must be videotaped. However, under the calculated use of force policy (Policy number 313.02), whenever the use of force team is deployed, the entire event must be videotaped, including initiation, housing move, continuing restraint and medical assessment and treatment.  Therefore, it is not clear that Smith's action in failing to videotape the entire event from beginning to end was a violation of policy. However, even assuming it was for purposes of summary judgment, the plaintiff cannot establish

that Smith had a sufficiently culpable state of mind.

The undisputed facts show that Smith was not a trained correctional officer. Therefore, at the time the plaintiff was placed on the elevator, Smith was asked to take the stairs. Moreover, once he was in the decontamination unit, Smith stopped taping to admit a nurse. The undisputed facts show logical and reasonable reasons why Smith did not videotape the first elevator ride or that portion of the decontamination when the nurse was admitted to the room. Moreover, the undisputed facts show that Smith did not see the plaintiff bite Graham nor hear any officer on the extraction team threaten the plaintiff with physical violence at any time. Thus, he could not have known that Graham would "seek revenge" or harm the plaintiff in any way. For the same reasons, the undisputed facts do not support the plaintiff's contention that Smith strategically left the area so that the plaintiff could be physically harmed while the camera was off. There is simply nothing in the record from which any reasonable person could make that inference or draw that conclusion. Accordingly, the undisputed facts establish that Smith did not have the requisite state of mind to sustain the plaintiff's claim of deliberate indifference and Smith is entitled to judgment as a matter of law.

## V.   Recommendation

For the reasons stated, the undersigned recommends that the plaintiff's Motion for Summary Judgment (dckt. 101) be **DENIED**, the defendants' Motion for Summary Judgment (dckt. 103) be **GRANTED** and the plaintiff's complaint (dckt. 1) be **DISMISSED with prejudice** from the active docket of this court.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those

portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to counsel of record via electronic means and to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket.

DATED: March 22, 2010.

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE